IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

MICHAEL DAVID LEE WALKER                                                              PLAINTIFF

   v.     Civil No. 6:21-cv-06144-SOH-MEF

CORPORAL CHRISTIAN TILLMAN,
Ouachita River Correctional Unit                                                       DEFENDANT

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

  Plaintiff, Michael Walker ("Walker"), currently an inmate of the Maximum-Security Section, Ouachita River Correctional Unit, of the Arkansas Division of Correction ("ADC"), filed this civil rights action under 42 U.S.C. § 1983. Walker proceeds *pro se* and *in forma pauperis*. Walker alleges that Defendant, Corporal Christian Tillman ("Corporal Tillman"), violated his federal constitutional rights by using excessive physical force against him.

  Pursuant to 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation on the pending Motion for Summary Judgment (ECF No. 19) filed by Corporal Tillman. Walker responded (ECF No. 23) to the Motion, and it is ready for decision.

### I. BACKGROUND

  On August 18, 2021, Corporal Tillman escorted Walker from isolation cell 11 to disciplinary court for three scheduled disciplinary hearings. (ECF No. 19-4 at 2). According to Corporal Tillman, just minutes into the first of the scheduled hearings, "Walker became aggressive with me because I informed him and the disciplinary officer, Terrie Banister, about the rules regarding time credit for inmates in punitive isolation." *Id.* Corporal Tillman indicates Walker

1

began cussing him, telling him to shut up, and saying he was not talking to Corporal Tillman. *Id.* As this behavior continued, Corporal Tillman "informed Ms. Banister that Walker's behavior constituted a waiver of his two additional disciplinary hearings scheduled for that afternoon." *Id.* The waiver meant that a not guilty plea was automatically entered; Walker would not be permitted to make a statement regarding the disciplinary charge; and Walker could not appeal the disciplinary. *Id.*

When they left disciplinary court, Corporal Tillman contends Walker became aggressive towards him and tried pulling away stating "Get the f--- off me." (ECF No. 19-3 at 6). According to Corporal Tillman, he "used the least force necessary to assist inmate Walker to the ground where I regained control." *Id.* In his declaration, Corporal Tillman indicates he attempted to regain control by pushing Walker up against the wall but could not get him all the way to the wall because he "planted his feet and dropped his body weight in [an] attempt to break my hold of him." (ECF No. 19-4 at 3). Corporal Tillman "followed" Walker to the ground. *Id.*

Sergeant Justin Hunter was called to assist with escorting Walker back to his cell. (ECF No. 19-3 at 6). Corporal Tillman charged Walker with resisting apprehension and refusing a direct verbal order. *Id.* Walker was found guilty of resisting apprehension. *Id.* at 7. Prior to this incident, Corporal Tillman had no problems with Walker. In fact, Corporal Tillman states that Walker was a model inmate prior to being placed in isolation. (ECF No. 19-4 at 4).

Walker was placed in isolation because he "popped" the sprinklers. (ECF No. 19-5 at 5). The first disciplinary hearing was a result of this conduct. *Id.*

In his deposition, Walker testified he had no problems with Corporal Tillman at any other time before or after this incident. (ECF No. 19-5 at 4). When Corporal Tillman came to

2

Walker's cell before the disciplinary hearing, Sergeant Hunter was with him. *Id.* at 5. However, Sergeant Hunter then left and did not assist in the escort. *Id.* Walker believes Corporal Tillman was frustrated because he did not have any assistance in escorting Walker to disciplinary court. *Id.*

Walker indicates that during his first disciplinary hearing he was asking the disciplinary judge for credit for the time he had already been locked up in isolation. (ECF No. 19-5 at 4). Corporal Tillman began arguing against Walker getting credit because he was already in isolation. *Id.* Walker explained that he still had privileges, but just was not allowed out of his cell. *Id.* According to Walker, Corporal Tillman ended up saying Walker had been cussing at him and said Walker had waived his disciplinary hearings. *Id.* Walker was agitated when Corporal Tillman said he had waived his hearings. *Id.* at 5. Walker denied having cussed Corporal Tillman and, in fact, indicates the hearing judge stated she had not heard Walker say anything. *Id.* at 6.

When they started back to Walker's cell, Corporal Tillman said something about Walker pulling away from him and slammed him against the wall and then to the floor. (ECF No. 19-5 at 5). At this point, Walker maintains Corporal Tillman started ramming his knee into Walker's back. *Id.* at 5-6. Walker maintains he did not pull away from Corporal Tillman. *Id.* at 5. Walker points out that his hands were cuffed behind his back the entire time. *Id.*

Walker was seen by medical staff just a few minutes after the incident occurred. (ECF No. 19-5 at 6; ECF No. 19-7 at 1). Walker testified he had bruising on his left arm where Corporal Tillman grabbed him, swelling and indentations on both wrists from the handcuffs, and some back pain for a month or a month and a half. *Id.*

Walker testified he filed a grievance on the day of the incident. (ECF No. 19-5 at 7).

Sergeant Horton signed it. *Id.* Walker then initiated step two but received it back from the grievance officer with a post-it-note that said once an incident has been forwarded to Internal Affairs, the ADC had to wait for the Internal Affair's decision. *Id.*; *see also* ECF No. 23 at 4. Walker was told he would be advised about the decision. *Id.* Step two of the grievance had not been completed. He sent the grievance to Pine Bluff but received it back stamped unprocessed, previously answered or rejected. *Id.* Walker testified he probably filed nine or ten different grievances. *Id.* He received no response to any of the grievances. *Id.*

On October 23, 2021, Walker completed step one on a grievance that summarized his efforts to submit grievances about Corporal Tillman's use of force. (ECF No. 23 at 11). He referred to his initial grievances submitted on August 18, 2021, which received a post-it note response with nothing written in on step two. *Id.* On October 28, 2021, Vicky Rawlins responded: "the issue with Cpl. Tillman has been resolved and referred to I.A. You will not know what actions were taken towards Cpl. Tillman." *Id.* The grievance number assigned was OR-21-00766. *Id.* Walker appealed. *Id.* at 12. The Warden's decision was as follows: "This grievance OR-21-00766 was acknowledged in error, it should have been rejected. Disciplinary matters are non-grievable per policy AD 19-34." *Id.* at 15. Walker again appealed stating that he was grieving the issue of Corporal Tillman's use of force and his failure to adhere to the policy requiring more than one officer to escort an inmate. *Id.* at 15-16. His appeal was denied. *Id.* at 17. The Director noted Walker had not provided any evidence to support his allegations that he had submitted prior grievances. *Id.* Further, the Director noted the grievance procedure outlined the appropriate steps to be taken to exhaust a grievance. *Id.*

## II.     APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.   DISCUSSION

Corporal Tillman moves for summary judgment on the following grounds: (1) Walker failed to exhaust his administrative remedies prior to filing suit; (2) he is entitled to qualified immunity; and (3), he is entitled to sovereign immunity on the official capacity claims against him. Regarding the third ground asserted, the Court notes that Walker has sued Corporal Tillman in his

5

individual capacity only.  (ECF No. 1 at 5).

### A. Exhaustion of Administrative Remedies

Prisoners are required to exhaust the grievance procedures of the detention facility they are assigned to prior to filing a § 1983 suit.  42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 218 (2007).  The exhaustion requirement allows a prison to address complaints before being subject to suit, reduces litigation when complaints are resolved, and provides a useful record if suit is filed. *Jones*, 549 U.S. at 219.

Specifically, 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Exhaustion is mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).  In *Jones*, the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Jones*, 549 U.S. at 218 (cleaned up).  The Court stated the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

The Eighth Circuit has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures, or (2) when the officials themselves fail to comply with the grievance procedures.  *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (explaining a prisoner is only required to exhaust those administrative remedies that are available and any

remedies that prison officials prevent a prisoner from utilizing are not considered available)). An inmate's own subjective belief about the effectiveness of the grievance procedure is not an excuse for failure to follow its provisions. *See e.g., Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

The ADC has a detailed three-step grievance procedure consisting of: Step One, an informal unit level grievance; Step Two, a formal grievance; and Step Three, an appeal. (ECF No. 19-1 at 1-31, Administrative Directive 19-34). A single form is used for both Step One and Step Two. *Id.* at 4. The grievance may address only one issue; the inmate is to be specific regarding the substance of the issue; the inmate is to include the date, place, and personnel involved; and the inmate is to state "how the policy or incident affected the inmate submitting the form." *Id.* at 6. The inmate is limited to the space provided on the form and may not attach additional pages. *Id.* The unit level grievance form "shall be completed and submitted within 15 days after the occurrence of the incident." *Id.* at 6.

A designated problem solver is to contact the inmate within three working days. (ECF No. 19-1 at 7). If the problem solver fails to do so, the inmate may proceed to Step Two, however, Step Two must be filed within six working days from submission of the unit level grievance. *Id.* at 8.

If a decision is made on an inmate's unit level grievance, a dissatisfied inmate may proceed to Step Two – the filing of a formal grievance. (ECF No. 19-1 at 8) The inmate does so by completing Step Two on the same unit level grievance form. *Id.* The inmate is to state why he "considers the informal resolution unsuccessful." *Id.* at 9. The inmate cannot raise new or additional issues or complaints. *Id.* Receipt of the Step Two grievance is acknowledged if a decision cannot be made by the Warden, Health Services Administrator, or Mental Health

Supervisor within five working days. *Id.* at 10. A decision is to be made within 20 working days unless an extension form provides a different date. *Id.* at 11.

If the inmate is dissatisfied with the response or does not receive a response to Step Two in the allotted time frame, he may move to the next level – an appeal to the Chief Deputy, Deputy, Assistant Director level. (ECF No. 19-1 at 11). The appeal must be filed within five working days of the date of the response or the date a response was due. *Id.* at 11-12. Regarding allegations of abuse, the procedure provides that "[a]ny credible allegation of excessive force, sexual harassment or abuse, assault, or similar physical abuse of an inmate will be forwarded to the Internal Affairs Division for an investigation consistent with Arkansas Division of Correction policies." *Id.* at 15.

April Gibson, an inmate grievance coordinator with the ADC, asserts that Walker "has not fully appealed any grievance that raises" allegations concerning Corporal Tillman's use of excessive force. (ECF No. 19-2 at 6). Ms. Gibson indicates Walker has only filed three grievances, and only one of those is relevant to this lawsuit – Grievance No. OR-21-00766. *Id.* This grievance is dated October 23, 2021, and Walker asserts that the grievance forms he previously filed about the conduct of Corporal Tillman on August 18, 2021, had not been handled correctly. *Id.* As two issues cannot be addressed in the same grievance, Ms. Gibson indicates it does not grieve about the conduct of Corporal Tillman on August 18, 2021. *Id.* at 7. When an inmate lists "numerous issues in a grievance, grievance officers consider only the most serious allegation. Even if Walker would have provided more detail about the alleged conduct of [Corporal] Tillman on August 18, 2021, and that issue was considered the more serious Grievance No. OR-21-00766 would have still been untimely pursuant to AD 19-34." *Id.* In fact, Ms.

Gibson asserts neither issue, the mishandling of grievances or Corporal Tillman's conduct, was raised in a timely manner in OR-21-00766. *Id.* at 8. Ms. Gibson concludes Walker did not exhaust his excessive force claim against Corporal Tillman prior to filing this lawsuit. *Id.* at 9.

In OR-21-00766 Walker referred to grievance forms he completed on August 18th, August 24th, September 23rd, October 6th, October 13th, and October 14th, and stated he received responses to none of them. (ECF No. 19-2 at 7). Of these, only the first two, the grievances dated August 18th and August 24th, were filed within 15 days of the incident.

Walker has attached to his response a unit level grievance form showing he completed Step One on August 18, 2021. The form contains the following statement:

> Cpl. Tillman was escorting me from the court dis[ci]plinary hearing office by himself which was against pol[icy]. When we step out of the office into the hallway Cpl. Tillman slam[m]ed me against the wall then slam[m]ed me to the floor for no reason. While I was cuffed behind my back. Cpl. Tillman used excessive force when he slam[m]ed me against the wall and then the floor and while on the floor Cpl. Tillman slammed his knee in my back then slam[m]ed his knee again harder the second time. Something should be done.

(ECF No. 23 at 4). In the top right-hand corner of the grievance the receipt date of August 23rd is written in. *Id.* However, a second received date of August 24th is stamped on the form. *Id.* The grievance form indicates Walker proceeded to Step Two on September 1, 2021. *Id.*

Unfortunately, the bottom half of the form is obscured by several overlapping handwritten notes. (ECF No. 23 at 4). According to Walker, the response from the grievance officer was that "after speaking with the major, this incident is being fully investigated and has been sent to IA for their review as of 8/24/21." (ECF No. 19-5 at 7). The answer appears to have been signed by Vicky Rawlins. *Id.* Walker then proceeded to Step Two, and received it back with a post-it-note that said "once an incident has been forwarded to Internal Affairs, ADC has to wait for Internal

9

Affairs' decision. You will be notified of their decision." *Id.* Even though a response to Step Two had not been written in on the unit level grievance form, Walker went ahead and sent his appeal to Pine Bluff. *Id.* It was stamped "Return to inmate for the following reason(s): not processed, previously answered/rejected, or a duplicate." (ECF No. 23 at 4). There is no indication of which of the stated reasons was the cause of the return of Walker's grievance. *Id.*

Walker testified he went ahead and filed several more grievances without receiving any responses back. (ECF No. 19-5 at 7). On September 20th, Walker submitted a grievance in which he indicated he had filed multiple grievances and had not received responses to any of them. (ECF No. 23 at 6). He said he "shouldn't have to file a grievance on the grievance system to get a[n] answer on my grievances." *Id.* That same day, Vicky Rawlins responded that she did not have any previous grievances for Walker and advised him to fill out another grievance. *Id.* Eventually, he filed the grievance dated October 23rd which was assigned grievance number OR-21-00766.

The Court agrees that the October 23, 2021, grievance was untimely regarding Walker's excessive force claim against Corporal Tillman. The question of whether Walker may proceed in view of his August 18, 2021, grievance is not so easily answered. According to Walker, he completed all three steps of the grievance procedure with respect to the August 18th grievance. He received the unsatisfactory response at Step One that the matter had been turned over to Internal Affairs. He then proceeded with Step Two and received only the post-it note in response. Therefore, he proceeded to the final step by sending his appeal to Pine Bluff, only to have it summarily dismissed. Defendant does not dispute Walker's receipt of the post-it-note in response to Step Two. Defendant does not dispute that Walker sent in an appeal which was merely stamped

and returned to Walker. Ms. Gibson's affidavit does not refer to the August 18th grievance or the rejection of Walker's appeal.

The Court concludes Walker either fully complied with the grievance procedure, or if he did not, it was not because of any action or inaction on his part. Walker attempted to appeal Step Two and his appeal was returned to him with a perplexing stamp which did not indicate what further steps Walker could or should take to fully exhaust his remedies. *See e.g., Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (explaining that a prisoner is only required to exhaust those administrative remedies available and any remedies that prison officials prevent a prisoner from utilizing are not considered available). An administrative remedy is not available when a prison official prevents a prisoner from utilizing it. *Id.* at 740. In fact, it appears the ADC officials were confused as to how to process a grievance addressing an incident which was also subject to an Internal Affairs inquiry. Defendant is not entitled to dismissal of this action based on Walker's failure to exhaust his administrative remedies.

## B. Use of Force

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. U.S. Const. amend. VIII. In *Whitley v. Albers*, 474 U.S. 312 (1986), the Supreme Court stated that:

> After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.
>
> . . .
>
> Where a prison security measure is undertaken to resolve a disturbance, such as occurred in this case, that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was

> applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Id.* at 319-20.  When determining whether a triable issue exists, the Court considers such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, the threat to the safety of the staff and inmates, and any attempt to temper the severity of the response.  *Id.* at 321.  "One acts 'maliciously' by undertaking, without just cause or reason, a course of action intended to injure another; in contrast, one acts 'sadistically' by engaging in extreme or excessive cruelty or by delighting in cruelty." *Howard v. Barnett*, 21 F.3d 868, 872 (8th Cir. 1994).  "The distinction provided by the inclusion of the term 'sadistically' is one of significance, for 'maliciously' and 'sadistically' have different meanings, and the two together establish a higher level of intent than would either alone."  *Id.*

The Supreme Court held that "the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of force applied is not in and of itself a threshold requirement for proving this type of Eighth Amendment claim."  *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010) (citing *Wilkins v. Gaddy*, 590 U.S. 34 (2010)).  Instead, "whether the Eighth Amendment was violated turns on 'whether force was applied . . . maliciously and sadistically to cause harm' not on whether a serious injury resulted from that force."  *Howard*, 21 F.3d at 872 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Video exists of the incident giving rise to Walker's claims.  Although there is no audio, the video beginning at 12:48:44 shows Corporal Tillman and Walker exiting a door at the end of a hallway.  Once they exit the door, Walker turns toward the left of the screen with his back partially toward Corporal Tillman.  It does appear that Walker is pulling away from Corporal Tillman.  Corporal Tillman then maneuvers Walker to the wall on the right side of the screen.

12

Walker turns so that his right shoulder is against the wall. At 12:48:53 Walker appears to drop toward the floor. Both Corporal Tillman and Walker are in a crouching position when Corporal Tillman attempts to take Walker to the floor. Corporal Tillman turns Walker so that both are facing toward the center of the hallway. Corporal Tillman struggles to take Walker to the floor. Walker resists going to the floor by spreading his legs apart and then going into a crouching position. Seconds later, at 12:48:58, Walker is flat on the floor with his head facing toward the right of the screen. Once Walker is on the floor, Corporal Tillman places his knee on Walker's back at 12:49:03. Corporal Tillman calls for assistance at 12:49:11. Corporal Tillman shifts positions a couple of times but keeps his knee on Walker's back. Sergeant Hunter arrives to assist, and at 12:50:08 Walker is picked up off the floor and escorted away without further incident.

After review of the video, the Court agrees with Defendant that there is no genuine issue of material fact as to whether he acted maliciously and sadistically for the very purpose of causing harm to Walker. At no point does Corporal Tillman strike or kick Walker. Walker resisted being placed flat against the wall and resisted being taken to the floor. Corporal Tillman did put his knee on Walker's back and did shift positions several times. Corporal Tillman's knee was on Walker's back just until assistance arrived approximately one minute and five seconds later. The fact that Corporal Tillman escorted Walker by himself, allegedly in violation of the ADC policy requiring two officers to escort an inmate, does nothing to establish a constitutional violation. *Walton v. Dawson*, 752 F.3d 1109, 1122 (8th Cir. 2014) ("violating an internal policy does not *ipso facto* violate the Constitution," instead the focus is on whether the conduct violated the Constitution). Here, violation of the ADC policy does not establish that Corporal Tillman used excessive force against Walker. Corporal Tillman is entitled to summary judgment in his favor.

### C. Qualified Immunity

Government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341-43 (1986)). Having found that the facts do not make out a constitutional violation, Corporal Tillman is entitled to qualified immunity. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

### IV. CONCLUSION

For these reasons, it is recommended that the Defendant's Motion for Summary Judgment (ECF No. 19) be **GRANTED**, and the case be **DISMISSED WITH PREJUDICE.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of August 2022.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE